## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN BRIDAL & PROM INDUSTRY ASSOCIATION, INC.; MON CHERI BRIDALS, LLC; PROMGIRL, INC.; MAGGIE SOTTERO DESIGNS, LLC; LA FEMME BOUTIQUE, INC.; PROMGIRL, LLC; ALYCE DESIGNS, INC.; ALLURE BRIDALS, INC.; NEXT CENTURY PRODUCTIONS, INC. d/b/a "SYDNEY'S CLOSET"; MORI LEE, LLC; LOVELANE, LLC; BONNY MT ENTERPRISES CO., LTD.; CASABLANCA BRIDALS, INC.; IMPRESSION BRIDAL, INC.; FORMOSA SUNRISE LLC; ESSENSE OF AUSTRALIA, INC.; EDWARD BERGER, INC.;  JOVANI FASHIONS LTD., PRECIOUS FORMALS, INC.; COUNTESS CORPORATION; and FAVIANA INTERNATIONAL, INC., | **CIVIL ACTION NO:** **3:17-cv-02454 (AET)(LHG)** |
| Plaintiffs, v. | |
| JOLLYPROM.COM, et al., | |
| Defendants. | |

---

### PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION AND RELATED RELIEF

---

**OF COUNSEL AND ON THE BRIEF:**

Craig S. Hilliard, Esq.
Gene Markin, Esq

**STARK & STARK**
A Professional Corporation
993 Lenox Drive, Bldg. Two
Lawrenceville, NJ 08648
Phone: (609) 895-7346

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

SUMMARY OF ARGUMENT ...................................................................................1

LEGAL ARGUMENT ................................................................................................3

     I.     Personal Jurisdiction Exists Over VBRIDAL.COM .................................3

     II.    Plaintiffs Have Shown A Likelihood of Success On The Merits On Their
               Lanham Act Claims Against Defendant ....................................................9

     III.   Plaintiffs Have Shown A Likelihood Of Success On The Merits On Their State
               Law Unfair Competition Claims Against Defendant..............................16

     IV.   Plaintiffs' Claims Are Not Preempted By The Copyright Act ..............20

CONCLUSION.........................................................................................................21

## TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page**

*Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232 (2d Cir. 1974) .................................. 10

*Am. Home Prods. Corp. v. Barr Labs., Inc.*, 656 F. Supp. 1058 (D.N.J. 1987) ......................... 16

*Am. Network v. Access Am. / Connect Atlanta*, 975 F. Supp. 494 (S.D.N.Y. 1997) .................... 4

*Am. Optical Co. v. Rayex Corp.*, 266 F. Supp. 342, 152 U.S.P.Q. (BNA) 311
 (S.D.N.Y. June 28, 1966) ........................................................................................... 12

*Am. Optical Co. v. Rayex Corp.*, 394 F.2d 155, 157 U.S.P.Q. (BNA) 465 (2d Cir.
 Apr. 26, 1968) ........................................................................................................ 12

*Am. Std., Inc. v. Lyons Indus.*, 1998 U.S. Dist. LEXIS 22882 (D.N.J. Feb. 17, 1998) ............... 18

*Ameripay, L.L.C. v. Ameripay Payroll, Ltd.*, 334 F. Supp. 2d 629 (D.N.J. 2004) ......................... 8

*Ames Publishing Co. v. Walker-Davis Publications, Inc.*, 372 F. Supp. 1 (E.D. Pa. 1974) ........ 17

*B.H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254 (5th Cir. 1971) ......................... 17

*Bangor Punta Operations, Inc. v. Universal Marine Co.*, 543 F.2d 1107, 192 U.S.P.Q.
 (BNA) 609 (5th Cir. Dec. 13, 1976) ............................................................................ 12

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ....................................................... 3, 5, 6

*C.B. Sports v. Gaechter-Haber & Assocs.*, 210 U.S.P.Q. (BNA) 597 (D. Vt. 1981) ................. 12

*Chanel, Inc. v. Guetae*, 2009 U.S. Dist. LEXIS 49365 (D.N.J. June 5, 2009) ............................ 7

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877 (3d Cir. 1981) ............. 3

*Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d 357
 (3d Cir. 1983) ........................................................................................................... 9

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ............................ 14, 15

*Desktop Techs., Inc. v. Colorworks Reproduction & Design, Inc.*, 1999 U.S. Dist.
 LEXIS 1934 (E.D. Pa. 1999) ........................................................................................ 4

*Elnicky Enters. v. Spotlight Presents, Inc.*, 213 U.S.P.Q. (BNA) 855 (S.D.N.Y. 1981) ............. 12

*Formula One Licensing BV v. F1 N.J., L.L.C.*, 180 F. Supp. 3d 330 (D.N.J. 2015) .................... 8

*Fotomat Corp. v. Photo Drive-Thru, Inc.*, 425 F. Supp. 693 (D.N.J. 1977) ............................... 19

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 1996 U.S. Dist. LEXIS 18653 (1996) .......... 20

*Fun-Damental Too, Ltd. v. Universal Music Grp., Inc.*, 1997 U.S. Dist. LEXIS 9597
 (E.D. Pa. July 8, 1997) ........................................................................................... 20-21

*Gale Group, Inc. v. Diane Corp.*, 20 U.S.P.Q.2d (BNA) 1550 (M.D. Fla. 1991) ...................... 12

*General Pool Corp. v. Hallmark Pool Corp.*, 259 F. Supp. 383, 151 U.S.P.Q. (BNA)
 372 (N.D. Ill. Oct. 19, 1966) ....................................................................................... 12

*Gourmet Video, Inc. v. Alpha Blue Archives, Inc.*, 2008 U.S. Dist. LEXIS 87645
 (D.N.J. Oct. 29, 2008) ................................................................................................. 7

*Helicopteros Nacionales De Colom. v. Hall*, 466 U.S. 408 (1984) ......................................... 3

*Hoffman La. Roche Inc. v. Genpharm Inc.*, 50 F. Supp. 2d 367 (D.N.J. 1999) .......................... 19

*Ideal Toy Corp. v. FAB-LU, Ltd.*, 261 F. Supp. 238, 152 U.S.P.Q. (BNA) 500
(S.D.N.Y. Dec. 8, 1966) ................................................................................................ 12

*Int-Elect Eng'g, Inc. v. Clinton Harley Corp.*, 27 U.S.P.Q.2d (BNA) 1631 (N.D. Cal. 1993) ... 12

*Interlink Prods. Int'l, Inc. v. F & W Trading L.L.C.* , 2016 U.S. Dist. LEXIS 44256
(D.N.J. Mar. 31, 2016) ................................................................................................. 13

*Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945) ..................................................................... 3

*Ives Labs., Inc. v. Darby Drug Co.*, 601 F.2d 631 (2d Cir. 1979) ........................................ 10

*Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 376 F. Supp. 1136
(S.D. Fla. 1974) ......................................................................................................... 17

*L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.*, 214 F.2d 649 (3d Cir. 1954) ...................... 9-10, 12

*Machulsky v. Hall*, 210 F. Supp. 2d 531 (D.N.J. 2002) ....................................................... 4

*Mass. Sch. of Law at Andover v. ABA*, 107 F.3d 1026 (3d Cir. 1997) ................................... 8

*Matsushita Elec. Corp. v. Solar Sound Sys., Inc.*, 381 F. Supp. 64, 184 U.S.P.Q. (BNA)
406 (S.D.N.Y. Sept. 5, 1974) ........................................................................................ 12

*Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217 (3d Cir. 1992) ............................. 3

*Merch. & Evans, Inc. v. Roosevelt Bldg. Prods. Co.*, 963 F.2d 628 (3d Cir. 1992) .............. 12-13

*N.J. Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc.*, 144 N.J. Super. 411 (1976) ........... 18

*Nat'l Dynamics Corp. v. John Surrey, Ltd.*, 238 F. Supp. 422, 144 U.S.P.Q. (BNA) 180
(S.D.N.Y. Nov. 20, 1963) ............................................................................................. 12

*Nat'l Dynamics Corp. v. John Surrey, Ltd.*, 238 F. Supp. 423, 144 U.S.P.Q. (BNA) 184
(S.D.N.Y. Dec. 18, 1964) ............................................................................................. 12

*Orth-O-Vision, Inc. v. HBO*, 474 F. Supp. 672 (S.D.N.Y. 1979) ................................... 21

*Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154 (1st Cir. 1977) ........................ 10

*Ryan v. Carmona Bolen Home for Funerals*, 341 N.J. Super. 87 (2001) ....................... 17

*Scovill Mfg. Co. v. Winnie Mae Mfg. Com*, 195 U.S.P.Q. (BNA) 155 (C.D. Cal. 1976) .......... 12

*SK&F Co. v. Premo Pharm. Labs. Inc.*, 625 F.2d 1055 (3d Cir. 1980) ............................. 9, 16

*Sublime Prods. v. Gerber Prods., Inc.*, 579 F. Supp. 248, 223 U.S.P.Q. (BNA) 383
(S.D.N.Y. Feb. 2, 1984) .............................................................................................. 12

*Supelco, Inc. v. Alltech Assocs.*, 1986 U.S. Dist. LEXIS 21236, 1986 WL 9282, at *4
(E.D. Pa. Aug. 27, 1986) ............................................................................................. 11

*Tefal v. Prods. Int'l Co.*, 186 U.S.P.Q. (BNA) 545 (D.N.J. 1975) ........................................ 19-20

*Time Mechanisms, Inc. v. Qonaar Corp.*, 422 F. Supp. 905 (D.N.J. 1976) .......................... 17

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003) ........................................ 4, 7-8

*Truck Equip. Serv. Co. v. Fruehauf Corp.*, 536 F.2d 1210, 191 U.S.P.Q. (BNA) 79
(8th Cir. June 9, 1976) ................................................................................................ 12

*U.S. Golf Ass'n v. U.S. Amateur Golf Ass'n*, 690 F. Supp. 317 (D.N.J. 1988) .......................... 5

4833-9215-0859, v. 1

*Upjohn Co. v. Riahom Corp.*, 641 F. Supp. 1209, 1 U.S.P.Q.2d (BNA) 1433
(D. Del. Aug. 6, 1986) ........................................................................... 12, 13

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552 (D.N.J. 2002) ...... 21

*Waldmann Lighting Co. v. Halogen Lighting Sys.*, 1992 U.S. Dist. LEXIS 21552
(N.D. Ill. Mar. 19, 1992) ........................................................................... 12

*Warner Bros. v. ABC*, 720 F.2d 231 (2d Cir. 1983) .................................. 20

*Wellness Publishing v. Barefoot*, 2008 U.S. Dist. LEXIS 1514 (D.N.J. Jan. 8, 2008) ......... 18-19

*Wilson v. Mr. Tee's*, 855 F. Supp. 679 (D.N.J. 1994) .............................. 20

*Zandelin v. Maxwell Bentley Mfg. Co.*, 197 F. Supp. 608, 131 U.S.P.Q. (BNA) 69
(S.D.N.Y. Sept. 26, 1961) ........................................................................ 12

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) .......................... 4, 5

**Statutes**

15 U.S.C. § 43(a) (2012) ........................................................................ 9-13, 15-16

15 U.S.C. § 650 (2012) ........................................................................... 11

15 U.S.C. § 1114 (2012) .......................................................................... 9

15 U.S.C. § 1125(a) (2012) ...................................................................... 10

N.J.S.A. § 56:4-1 (West) ......................................................................... 16

**Other**

3 Callman, Unfair Competition § 61.3 (3d ed. 1967) ................................ 18

74 Am. Jur. 2d *Trademarks and Tradenames* § 87 (rev. ed. 1974) ............ 17

74 Am. Jur. 2d *Trademarks and Tradenames* § 97-100 (rev. ed. 1974) ..... 17

87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 13 ......... 18

Plaintiffs submit this reply to Defendant Vbridal's response to the Temporary Restraining Order and Order to Show Cause for Preliminary Injunction issued by this Court on June 16, 2017.

## SUMMARY OF ARGUMENT

Defendant impermissibly capitalizes on Plaintiffs' goodwill and advertising investments in violation of the Lanham Act and New Jersey unfair competition law.  It does so by misappropriating images it does not own, of products it does not sell, and uses them to deceive consumers into purchasing dresses that bear little resemblance to the dresses in the images.  This is of course a paradigm case of unfair competition.  This is *not* the case of a competitor using its own marketing and product development to advertise and sell products that happen to be similar in design to that of another competitor.  Rather, this Defendant is blatantly taking Plaintiffs' images, which showcase Plaintiffs' products, and using them, after some minor photoshopping to avoid detection, as its own to sell different goods to unsuspecting consumers.

Plaintiffs have spent hundreds of thousands of dollars engaging professional models and photographers to stage their products in just the right way to showcase Plaintiffs' product designs and brands.  From the models' poses to the way the dresses are fitted, the images are carefully calculated to convey a certain image and quality that has become associated with Plaintiffs' names and reputations.  With just a few clicks of the mouse, Defendant usurped the fruits of Plaintiffs' painstaking labor and investment in order to use Plaintiffs' refined images of Plaintiffs' goods to sell, not Plaintiffs' goods, but second-rate knockoffs.

This is the epitome of unfair competition – using the property and goodwill of another to gain a competitive advantage and draw business away from the competition.  It matters not that the images Defendant displays are slightly altered or do not contain Plaintiffs' registered

1

trademarks (which Defendant removed for obvious reasons); Defendant is improperly using Plaintiffs' product images to attract customers.   This has resulted in irreparable harm[1] to Plaintiffs' reputation, goodwill, and business, and therefore, the TRO issued by this Court was necessary and proper.

Defendant challenges this Court's personal jurisdiction over Vbridal arguing that Plaintiffs have not advanced any proofs showing that Vbridal "targeted New Jersey customers, sold products to New Jersey customers, or had any other contacts with New Jersey." Def. Br. at p. 5.  Prior to filing this action, however, an employee of Plaintiff Mon Cheri ordered a prom dress from Vbridal, which was delivered to her address in Trenton, New Jersey.  Clearly, Defendant solicits customers in New Jersey and engages in commerce in New Jersey.  Tellingly, Defendant has neither asserted nor argued that it does not conduct business in New Jersey or ship products to New Jersey consumers – rather, it simply argues that Plaintiffs have not come forward with any direct proof of specific contacts.  The majority of that "proof," however, is in Defendant's possession and contained within Defendant's customer and shipping records. Should this Court require something more than Plaintiffs' purchase of a dress from Defendant, Plaintiffs respectfully request that the Court allow jurisdictional discovery in order to ascertain the true scope of Defendant's contacts with New Jersey.

---

[1] Defendant's opposition papers do not challenge the irreparable harm or public interest prongs of the injunctive relief standard applied in the Third Circuit.  Accordingly, this reply is confined to the "likelihood of success" prong.

## LEGAL ARGUMENT

I.   **PERSONAL JURISDICTION EXISTS OVER VBRIDAL.COM**

A.   **Defendant Has Availed Itself of the Privilege of Conducting Business In New Jersey by Delivering At Least One Dress to A New Jersey Address**

A district court may determine that personal jurisdiction exists when a defendant has "minimum contacts" with the forum state and if asserting jurisdiction based on those contacts comports with "fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable. *Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992).

A federal court can assert either specific or general jurisdiction over a defendant. Specific jurisdiction requires the defendant to have "minimum" contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). In addition, the lawsuit must "arise out of" or "relate to" these minimum contacts. *Id.* Furthermore, the defendant must have purposefully availed itself of the forum such that it "should reasonably anticipate being haled into court" there, having invoked the benefits and protections of the forum's laws. *Id.* at 474-75.

General jurisdiction, by contrast, requires the defendant to have "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 416 (1984). These contacts need not relate to the subject matter of the litigation. *Id.* at 415 n.9. General jurisdiction, however, requires "a very high threshold of business activity." *Compagnie des Bauxites de Guinea v. Ins. Co. of N. America*, 651 F.2d 877, 891 n.2 (3d Cir. 1981) (finding that a "daily presence" in the forum and activities such as weekly advertising, regular solicitation of business, substantial product sales, and the maintenance of a telephone number in the forum meet the threshold).

4833-9215-0859, v. 1

A website operated by the defendant may provide contacts sufficient to support jurisdiction. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003). If a website is neither "passive," i.e., solely informational, nor "commercially interactive," *i.e.*, capable of executing contracts over the Internet, then jurisdiction depends on: (1) the level of interactivity; and (2) the commercial nature of the exchange that occurs on the site. *Id*. In trademark infringement actions, however, there must be "something more" than the infringement itself to show that the defendant directed its activity towards the forum. *Machulsky v. Hall*, 210 F. Supp. 2d 531, 539 (D.N.J. 2002). The defendant must have purposely availed itself of the forum by targeting its website there, knowingly conducting business with forum residents through the website, or by non-internet contacts, such as communications, business trips, or contracts in the forum. *Toys "R" Us*, 318 F.3d at 452-55 (finding a site that was designed primarily for sales to European customers not to be directed at New Jersey, despite two online sales to New Jersey residents and related email correspondence).

When a defendant sells its services to subscribers in the forum, *American Network, Inc. v. Access America/Connect Atlanta, Inc.*, 975 F. Supp. 494, 499 (S.D.N.Y. 1997), or assigns forum residents passwords knowing that the contacts will result in business relationships, *Zippo Manuf. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1126 (W.D. Pa. 1996), courts have asserted jurisdiction based on an infringing website. By contrast, a defendant who operated an infringing website but conducted business solely abroad and did not use its website to attract business in the forum was not subject to personal jurisdiction there. *Desktop Techs., Inc. v. Colorworks Reproduction & Design, Inc.*, 1999 U.S. Dist. LEXIS 1934, *6 (E.D. Pa. 1999).

The framework laid out in *Zippo* is instructive when determining whether a court may exercise personal jurisdiction over a defendant on the basis of that defendant's internet presence

and related contacts.  The issue before the court in *Zippo* was whether a Web site could provide sufficient contacts for specific personal jurisdiction.  The *Zippo* court held that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."  *Zippo*, 952 F. Supp. at 1124.  To illustrate that principle, the *Zippo* court outlined a "sliding scale" approach to be used in analyzing the propriety of personal jurisdiction based on Internet contacts:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

[*Id.* (citations omitted).]

Vbridal sells dresses over the internet to consumers all over the world, including in New Jersey and elsewhere in the United States.  Vbridal's website is interactive, allowing users to enter into contracts for the purchase of dresses and to receive emails from Vbridal with order information.  If Vbridal has sold and delivered a dress, which it advertised using Plaintiffs' images, to a New Jersey consumer, then personal jurisdiction over Defendant exists.  *See United States Golf Ass'n v. United States Amateur Golf Ass'n*, 690 F. Supp. 317, 320 (D.N.J. 1988) (there must be at least "a single deliberate contact" with the forum state that relates to the cause of action in order to confer personal jurisdiction).  Jurisdiction must also be reasonable. *Burger King*, 471 U.S. at 476 (finding that the assertion of jurisdiction must comport with "fair play and substantial justice").  A court must determine reasonableness by balancing the burden on the

5

defendant, the forum's interest in adjudicating the dispute, the judicial system's interest in the efficient resolution of disputes, the interests of the several states in furthering fundamental social policies, and the plaintiff's interest in convenient and effective relief. *Id*. at 476-77.

Here, while Defendant challenges the sufficiency of Plaintiffs' proofs establishing Defendant's minimum contacts with New Jersey, it has *not* contended that it does not do business in New Jersey. The truth is Defendant does sell to New Jersey residents and Plaintiffs have proof. As part of ABPIA's investigation of Defendants' websites and business activities, it placed orders on Defendants' websites for dresses advertised using Plaintiffs' images and had them shipped to New Jersey. *See* Declaration of Jon Liney (the "Liney Decl."), at ¶¶ 1-5. Defendants communicated with ABPIA members located in New Jersey through email and delivered the purchased dresses to the designated New Jersey address.

With respect to Defendant Vbridal, Jon Liney, a member of the Board of Directors of Plaintiff ABPIA, asked Melissa Gater, an employee of Plaintiff Mon Cheri Bridals LLC, to place an online order from Vbridal for a prom dress that was advertised using Plaintiff Faviana International's proprietary image of a Faviana prom dress. *Id*. at ¶ 5. In July of 2016, Ms. Gater placed the order, received email confirmation that the order was received and processed, and then a few weeks later received the purchased dress at Mon Cheri's address at 1018 Whitehead Rd Ext, Trenton, NJ 08638. *Id*. at ¶¶ 6-7; *see also* Vbridal Order & Shipping Documents, attached as **Exhibit A** to the Liney Decl. Mr. Liney examined the Vbridal dress and confirmed that it was not a genuine Favania prom dress, but rather a cheap knockoff made of inferior materials. *Id*. at ¶ 7.

Plaintiffs' purchase and receipt of a prom dress from Vbridal is enough to confer specific jurisdiction in this litigation, which concerns Vbridal's improper use of Plaintiffs' images of

Plaintiffs' dresses to sell cheap imitations.  In *Chanel, Inc. v. Guetae*, Civil Action No. 07-3309 (JAG), 2009 U.S. Dist. LEXIS 49365 (D.N.J. June 5, 2009), as part of its investigation into the sale of counterfeit merchandise, plaintiff's private investigator ordered a handbag from defendant's website and had it shipped to his address in Linwood, New Jersey.  *Id*. at *1-2.  Plaintiff's investigator received an email confirmation of his purchase from the defendant and later received the handbag at this New Jersey residence.  *Id*. at *2.  Plaintiff examined the handbag and concluded that it was a counterfeit.  *Ibid*.  Plaintiff filed a complaint against defendant, who did not answer, and thereafter sought default judgment.  *Id*. at *3.

This Court engaged in a personal jurisdiction analysis and determined that when defendant shipped the counterfeit handbag to the investigator's New Jersey residence, it was knowingly interacting with a resident of New Jersey through the defendant's website and, thus, purposefully availed itself of conducting activity in New Jersey.  *Id*. at *11.  As such, this Court properly exercised personal jurisdiction over the defendant and entered the requested default judgment.  *Id*. at *12.

The same is true here.  Defendant Vbridal processed an order placed through its website by a New Jersey resident and shipped the purchased dress to an address in New Jersey.  Defendant, therefore, purposefully availed itself of the privilege of conducting business in New Jersey on at least one occasion.  *See Gourmet Video, Inc. v. Alpha Blue Archives, Inc.*, 2008 U.S. Dist. LEXIS 87645, at *4 (D.N.J. Oct. 29, 2008) ("[A] defendant purposefully avails itself of the forum state where the defendant conducts business with the forum state's residents and knowingly ships its products to the forum state.").  Personal jurisdiction over Vbridal is, therefore, proper and adequately supported by Plaintiffs' proofs.  *See Toys "R" Us*, 318 F.3d at 456 (Plaintiff need only present a prima facie case for the exercise of personal jurisdiction by

7

alleging with "reasonable particularity" facts that would establish sufficient contacts between the defendant and the forum).

### B.   Alternatively, Jurisdictional Discovery Is Appropriate to Uncover Additional Evidence of Defendant's Deliberate Contacts and Business In New Jersey

To the extent this Court believes that Defendant's deliberate sale and shipment of a prom dress to a consumer in New Jersey is insufficient to confer personal jurisdiction, Plaintiffs respectfully request the opportunity to conduct jurisdictional discovery to determine what other contacts and sales Defendant has had with New Jersey.  *See, e.g.*, *Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F. Supp. 2d 629, 634 (D.N.J. 2004) (if the plaintiff can allege with "reasonable particularity" the possible existence of the requisite jurisdictional contacts, then jurisdictional discovery should be granted); *Toys "R" Us*, 318 F.3d at 456-57 (granting discovery because the request was not "frivolous," since the court had improperly denied discovery of non-Internet contacts).

Because the Federal Rules and this Circuit permit liberal discovery of jurisdictional facts which are relevant and not privileged, *see Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1041 (3d Cir. 1997), there is a presumption in favor of allowing discovery to establish personal jurisdiction.  *Formula One Licensing BV v. F1 N.J., LLC*, 180 F. Supp. 3d 330, 340 (D.N.J. 2015).   Here, records which would establish personal jurisdiction over Defendant are in the exclusive control of Vbridal.   Those records include historical purchase and shipping information, which will indicate the amount of sales in and the number of goods shipped to New Jersey.

Accordingly, and in the alternative to finding personal jurisdiction based on Vbridal's delivery of a prom dress purchased by Plaintiffs in New Jersey, this Court should grant jurisdictional discovery to determine whether the Court may exercise specific jurisdiction over

Vbridal.  Discovery will focus on the nature and extent of Vbridal's delivery and sales of dresses, it advertises using Plaintiffs' images, within New Jersey.  *See Compagnie des Bauxites de Guinee v. L'Union*, 723 F.2d 357, 362 (3d Cir. 1983) ("When the fish is identified, and the question is whether it is in the pond, we know no reason to deny a plaintiff the customary license.").

## II.     PLAINTIFFS HAVE SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS ON THEIR LANHAM ACT CLAIMS AGAINST DEFENDANT

Defendant's entire opposition proceeds from the flawed assumption that the claims against it are solely trademark counterfeiting and infringement claims under 15 U.S.C. §1114. While Plaintiffs' claims against other defendants in this and in 7 earlier lawsuits before this Court are based in part on the unlawful use of registered trademarks, Defendant utterly ignores the other claims for federal and state unfair competition pled in the Complaint.   In fact, Defendant's opposition completely misses the point by mischaracterizing the nature of Plaintiffs' claims.  Plaintiffs are not contending that Vbridal is using Plaintiffs' trademarks – Defendant has carefully scrubbed Plaintiffs' images of any identifying marks prior to posting them on its website.  Nor are Plaintiffs asserting that their dress designs are protectable under trade dress law.  Instead, and as this application was presented to the Court, the core part of the case against Defendant and many of the other websites listed in this action is the unlawful use of images of Plaintiffs' products to sell different products.  This inherently deceptive conduct is a passing off claim of the first order, outlawed by the Lanham Act and state law, and properly remedied by the equitable powers of this Court.

Section 43(a) of the Lanham Act is a remedial statute and is broadly construed by the courts to protect against "unfair competitive practices involving actual or potential deception." *SF&K Co. v. Premo Pharmaceutical Lab.*, 625 F.2d 1055, 1065 (3d Cir. 1980); *L'Aiglon Apparel*

*v. Lana Lobell, Inc*., 214 F.2d 649 (3d Cir. 1954).

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in relevant part that

> Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any *false description or representation*, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce . . . shall be liable to a civil action . . . by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

[(emphasis added).]

It is well established that § 43(a) proscribes not only acts that would technically qualify as trademark infringement, but also unfair competitive practices involving actual or potential deception. *L'Aiglon Apparel,* 214 F.2d at 650-51; *see also Ives Labs., Inc. v. Darby Drug Co.*, 601 F.2d 631, 641-42 (2d Cir. 1979) (§ 43(a) creates federal statutory torts of unfair competition beyond simple trademark infringement); *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 160 (1st Cir. 1977) (§ 43(a) standing to sue extends beyond trademark owner to other injured parties); *Alfred Dunhill Ltd. v. Interstate Cigar Co*., 499 F.2d 232, 236 (2d Cir. 1974) (§ 43(a) extends rights to parties injured by false advertising).

This Court need look no further than *L'Aiglon Apparel* to reject Defendant's contention that Plaintiffs cannot make out a Section 43(a) claim under the Lanham Act solely because it is careful not to use any of Plaintiffs' registered trademarks in the altered images of Plaintiffs' products it promotes on its website.  In *L'Aiglon Apparel*, the plaintiff alleged that the defendant had used a picture of the plaintiff's dress, which the plaintiff was selling for $17.95, to advertise the defendant's dress, which it sold for $6.95, but that was highly inferior to that of the plaintiff in quality and notably different in appearance.  The plaintiff alleged that the misrepresentation caused some trade to be diverted from the plaintiff to the defendant and also caused other trade

to be lost by the plaintiff as a result of the mistaken impression conveyed to those familiar with the advertising of both parties that the plaintiff was offering for $17.95 a dress worth only $6.95. The Court of Appeals reversed the district court's dismissal of the plaintiff's claim under § 43(a) of the Lanham Act, finding that "this complaint states about as plain a use of a false representation in the description of goods sold in commerce as could be imagined." *Id.* at 650.

Here, Plaintiffs' Complaint makes similar allegations that Defendant's use of images of Plaintiffs' products to sell inferior counterfeit products has diverted trade away from Plaintiffs and has caused economic damage as well as irreparable injury to Plaintiffs' goodwill and reputation. *See* Complaint at ¶¶ 35, 37, 45, 46, and 48.

In cases involving a defendant's alleged use of photographs of a plaintiff's product in defendant's advertising, it has been held that a cause of action under § 43(a) is made out by proof that the defendant (1) falsely represented that the photograph of his competitor's product was his own and (2) that the pictured product is not identical to the one the defendant is prepared to deliver. *Supelco, Inc. v. Alltech Assocs., Inc.*, No. 86-2484, 1986 U.S. Dist. LEXIS 21236, 1986 WL 9282, at *4 (E.D. Pa. Aug. 27, 1986).

Considering a plaintiff's motion for an injunction in a case alleging that the defendants' brochures and catalogs contained photographs of the plaintiff's vacuum manifold, a device that was "similar but not identical to the device defendants actually marketed," the Court in *Supelco* found that the plaintiff was likely to prevail on the merits of its claim under § 43(a) of the Lanham Act. *Supelco, Inc.*, 1986 U.S. Dist. LEXIS 21236, at *2, 5. Essentially, the defendant had "represent[ed] falsely that their competitor's product was their own," 1986 U.S. Dist. LEXIS 21236 at *5, and therefore, the plaintiff had sufficiently made out a violation of the Lanham Act.

It is now well established that a person's use of a picture or other depiction of a

4833-9215-0859, v. 1

competitor's product to sell his own product violates § 43(a).[2]  *See, e.g.*, *Sublime Products, Inc.*

*v. Gerber Products, Inc.*, 579 F. Supp. 248 (S.D.N.Y. 1984) (enjoining competitor defendants

from advertising their products by using photographs of plaintiff's products and finding that

because defendants offer their products at approximately half the price of plaintiff's "there is a

substantial likelihood that business will be diverted by virtue of this deception"); *Elnicky*

*Enterprises, Inc. v. Spotlight Presents, Inc.*, 213 U.S.P.Q. 855 (S.D.N.Y. 1981) (enjoining

defendant's use of videotape depicting plaintiff's product); *Waldmann Lighting Co. v. Halogen*

*Lighting Sys.*, Civil Action No. 91 C 3491, 1992 U.S. Dist. LEXIS 21552, at *81 (N.D. Ill. Mar.

19, 1992) ("If a photograph of a competitor's product is used to advertise an inferior product, the

advertiser has misrepresented the quality of its product and has violated Section 43(a) of the

Lanham Act as a matter of law."); *Merch. & Evans, Inc. v. Roosevelt Bldg. Prods. Co.*, 963 F.2d

628, 635 (3d Cir. 1992) ("the use by defendant of a photograph of his competitor's product in his

---

[2] *Truck Equip. Serv. Co. v. Fruehauf Corp.*, 536 F.2d 1210, 191 U.S.P.Q. 79 (8th Cir. 1976), *cert. denied*, 429 U.S. 861 (1977) (photographs of plaintiff's trailer); *Bangor Punta Operations, Inc. v. Universal Marine Co.*, 543 F.2d 1107, 192 U.S.P.Q. 609 (5th Cir. 1976) (photograph of plaintiff's trawler); *L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.*, 214 F.2d 649, 102 U.S.P.Q. 94 (3d Cir. 1954) (defendant advertised its inferior $6.95 dress with a photograph of plaintiff's $17.95 dress); *Int-Elect Eng'g Inc. v. Clinton Harley Corp.*, 27 U.S.P.Q.2d 1631 (N.D. Cal. 1993) (motorcycle photograph used in blow-in card); *Gale Group, Inc. v. Diane Corp.*, 20 U.S.P.Q.2d 1550 (M.D. Fla. 1991); *Upjohn Co. v. Riahom Corp.*, 641 F. Supp. 1209, 1 U.S.P.Q.2d 1433 (D. Del. 1986) (videotape and other materials showing plaintiff's products); *Sublime Products, Inc. v. Gerber Products, Inc.*, 579 F. Supp. 248, 223 U.S.P.Q. 383 (S.D.N.Y. 1984) (photographs of plaintiff's lamps in catalogues); *Elnicky Enterprises, Inc. v. Spotlight Presents, Inc.*, 213 U.S.P.Q. 855 (S.D.N.Y. 1981) (video tape of plaintiff's robot); *C.B. Sports, Inc. v. Gaechter-Haber & Assoc., Inc.*, 210 U.S.P.Q. 597 (D. Vt. 1981) (artist's sketches of plaintiff's ski jackets); *Scovill Mfg. Co. v. Winnie Mae Mfg. Com., Inc.*, 195 U.S.P.Q. 155 (C.D. Cal. 1976) (photographs of plaintiff's electric hamburger cooker); *Matsushita Elec. Corp. v. Solar Sound Sys., Inc.*, 381 F. Supp. 64, 184 U.S.P.Q. 406 (S.D.N.Y. 1974) (violation found even though plaintiff's product not previously sold in United States); *General Pool Corp. v. Hallmark Pool Corp.*, 259 F. Supp. 383, 151 U.S.P.Q. 372 (N.D. Ill. 1966) (photograph of plaintiff's swimming pool); *American Optical Co. v. Rayex Corp.*, 266 F. Supp. 342, 152 U.S.P.Q. 311 (S.D.N.Y. 1966), *aff'd per curiam*, 394 F.2d 155, 157 U.S.P.Q. 465 (2d Cir.), *cert. denied*, 393 U.S. 835 (1968) (photograph of plaintiff's sunglasses); *Ideal Toy Corp. v. Fab-Lu Ltd. (Inc.)*, 261 F. Supp. 238, 152 U.S.P.Q. 500 (S.D.N.Y. 1966) (photographs of plaintiff's dolls); *National Dynamics Corp. v. John Surrey, Ltd.*, 238 F. Supp. 422, 144 U.S.P.Q. 180 (S.D.N.Y. 1963) (photograph of plaintiff's automobile defroster gun), *supplementary opinion*, 238 F.

own advertising in commerce is ordinarily a 'false representation' within, and hence actionable under, Section 43(a).").

In fact, only a few months ago this Court acknowledged the existence of a cognizable claim under § 43(a) of the Lanham Act where a person uses a picture or other depiction of a competitor's product to sell his own product. *See Interlink Prods. Int'l, Inc. v. F & W Trading LLC*, Civil Action No. 15-1340 (MAS) (DEA), 2016 U.S. Dist. LEXIS 44256, at *21 (D.N.J. Mar. 31, 2016). In such situations, unfair competition exists because the defendant unfairly seeks to trade on the plaintiff's reputation and goodwill by representing the plaintiff's product as his own or by creating the false impression that some association exists between the two products or their sources. *Upjohn Co. v. Riahom Corp.*, 641 F. Supp. 1209, 1222 (D. Del. 1986).

That is exactly what happened here, and tellingly, Defendant's opposition papers do not dispute it. Defendant took Plaintiffs' photographs and images of Plaintiffs' dresses and promptly displayed them on its website as its own product. *See* Exhibit 17 to the Declaration of Stephen Lang, submitted in support of Plaintiffs' application for a temporary restraining order. *See also* Declaration of Suren Ter Saakov. A cursory review of the side-by-side photographs contained in Plaintiffs' submissions illustrates that the images used by Defendant are not its own, but rather Plaintiffs' images, which in some cases were slightly modified to change the background color or to remove Plaintiffs' trademarks. It is easy to see that the models, their poses, hand placements, and observable accessories are identical as are the actual dresses themselves. Essentially, Defendant is displaying Plaintiffs' dresses through Plaintiffs' advertising to sell cheap knockoffs of Plaintiffs' goods for profit all the while harming the reputation and goodwill Plaintiffs have painstakingly developed over the years.

---

Supp. 423, 144 U.S.P.Q. 184 (S.D.N.Y. 1964); *Zandelin v. Maxwell Bentley Mfg. Co.*, 197 F. Supp. 608, 131 U.S.P.Q. 69 (S.D.N.Y. 1961) (photograph of plaintiff's telephone index).

Understandably, customers who visit an authorized retailer and fall in love with one of Plaintiffs' dresses are sorely disappointed and frustrated when they order what they believe to be an authentic dress at a "great price" from Defendant's website only to receive a product that bears little resemblance to the original.  That customer then ascribes blame to Plaintiffs and their authorized retailers, who have on numerous occasions received complaints from duped customers seeking to understand why what they purchased was nothing like what they saw in the store.  *See* Supplemental Declaration of Stephen Lang.  This of course causes great harm and injury to Plaintiffs' established name, image, brand, and reputation, not to mention lost revenue from the diverted sales.

*Dastar* does not preclude Plaintiffs' claims.  The issue in *Dastar* was whether a re-editing of a World War II television series, which was originally produced by Twentieth Century Fox, and sold by Dastar as a Dastar product, without any credit to or accreditation from Fox, violated the Lanham Act as a "false designation of origin." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31 (2003) (the gravamen of the claim is that, in marketing and selling the television series  as its own product without acknowledging its nearly wholesale reliance on the television series prepared by Fox, Dastar has made a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion . . . as to the origin . . . of his or her goods.").

The Supreme Court noted that such a claim would undoubtedly be sustained if Dastar had bought some of Fox's videotapes and then merely repackaged them as its own.  *Ibid.*  The conduct in question, however, was different – Dastar took a creative work in the public domain, copied it, made minor modifications, and then sold the television series as its own.  *Id*. at 32. The Supreme Court found no violation of the Lanham Act because "origin of goods" refers to

14

"the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id*. at 37.  Dastar was the "origin" of the products it sold as its own, and therefore, by saying it was the producer of the video, Dastar had not violated the Lanham Act.  *Id*. at 38.  Should a valid copyright registration in the works that Dastar copied exist, however, the copyright holder would have a cognizable claim for copyright infringement against Dastar.  *Ibid*.

*Dastar* dealt with the "false designation of origin" prong of Section 43(a); Plaintiffs' claims against Defendant, however, are premised on the "false representation" prong.  Plaintiffs are not contending that Defendant is selling Plaintiffs' goods as its own, rather Plaintiffs are claiming that Defendant is deceiving the purchasing public by advertising its inferior dresses using images of Plaintiffs' dresses.  It would be one thing if Defendant copied Plaintiffs' dress designs, put them on its own models, took its own photos, and then used them to advertise its dresses.  But that is not what is happening.  Defendant is deliberately using images that were painstakingly developed by Plaintiffs to showcase Plaintiffs' dresses to lure people into buying cheap knockoffs from Defendant.  An analogous example would be a company using Apple's photos of the iPhone 7 (without any Apple brand identifiers) to sell an inferior device at half price that at first glance looks similar to the iPhone.  It is the deception, misrepresentation, and harm arising from the use of a competitor's images of the competitor's goods to sell one's imitation goods that is the violation of the Lanham Act alleged here and that forms the basis of Plaintiffs' claims against Defendant.

It matters not that Defendant had allegedly removed the images identified in Exhibit 17 to the Lang Declaration prior to its website being taken down.  Since the site has been taken down, Plaintiffs cannot confirm what proprietary images are still being used on Defendant's website.

Nevertheless, Vbridal has myriad identical sister sites, including Vbridal.net, which is the first organic result when "vbridal" is searched on Google, that are currently using thousands of Plaintiffs' images to sell second rate goods.  *See* Summary of Active Infringing Images on Vbridal Websites, attached as **Exhibit A** to the Declaration of Armen Petrossian.

Plaintiffs have therefore established a likelihood of success on their § 43(a) claims against Defendant and this Court should enter the preliminary injunctive and related relief sought by Plaintiffs.

### III. PLAINTIFFS HAVE SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS ON THEIR STATE LAW UNFAIR COMPETITION CLAIMS AGAINST DEFENDANT

New Jersey's statutory prohibition on unfair competition reads:

> No merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals.

> [N.J.S.A. 56:4-1.]

"Passing off" is a form of unfair competition under both New Jersey and federal law. *SK&F Co. v. Premo Pharmaceutical Laboratories*, 625 F.2d 1055, 1062 (3d Cir. 1980).  Passing off is actionable as unfair competition because a close resemblance to another product may confuse consumers as to whether the products are not only substitutable, but are in fact the same -- suggesting, in effect, that one commercial entity is responsible for producing both products. Such a misunderstanding can do great harm to the maker of the imitated product, saddling the maker with undeserved blame from consumers dissatisfied with the imitator's product and an undeserved loss of sales to consumers satisfied with the imitator's product. *American Home Products Corp. v. Barr Laboratories, Inc.*, 656 F. Supp. 1058, 1068 (D.N.J. 1989).

New Jersey unfair competition law is broad and not strictly limited to the passing off of

16

one's goods or services as those of another.  In *Ryan v. Carmona Bolen Home for Funerals*, 341 N.J. Super. 87, 92 (App. Div. 2001), the Appellate Division repeated this view:

> The essence of unfair competition is *fair play*. Thus, the purpose of the law regarding unfair competition is to *promote higher ethical standards in the business world*. Accordingly, the *concept is deemed as flexible and elastic as the evolving standards of commercial morality demand*. The judicial goal should be to discourage, or prohibit the use of misleading or deceptive practices which renders competition unfair. The law must be sufficiently flexible to accommodate those goals.
>
> [*Id.* (citations and quotations omitted) (emphasis added).]

In short, unfair competition at common law is a species of deceit, especially through "the simulation by one person of the name, symbols or devices employed by a business rival, so as to induce the purchase of his goods under a false impression as to their origin or ownership and thus secure for himself benefits properly belonging to his competitor." 74 Am. Jur.2d, Trademarks and Tradenames, § 87 (rev. ed. 1974).  It is possible to be guilty of unfair competition even when trademark infringement is not present, if use of a similar but noninfringing mark or device is combined with unfair practices in a manner which is likely to deceive purchasers regarding the origin of goods.  *See B. H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1259, 1262 (5th Cir. 1971); *Ames Publishing Co. v. Walker-Davis Publications, Inc.*, 372 F. Supp. 1, 11 (E.D.Pa.1974); *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 376 F. Supp. 1136, 1143 (S.D.Fla.1974).

Unfair competition includes not only simulation of the appearances of goods with intent to "pass off," *Time Mechanisms, Inc. v. Qonaar Corp.*, 422 F. Supp. 905 (D.N.J. 1976), but also the simulation of appearance of advertising methods in such a manner as to deceive the public into believing they are dealing with the originator rather than the simulator of such methods. *See, e.g.*, 74 Am.Jur.2d, Trademarks & Tradenames, §§ 97-100 (rev. ed. 1974); 3 Callman,

Unfair Competition, § 61.3 (3d ed. 1967).

By using Plaintiffs' images of Plaintiffs' dresses to sell purportedly identical, yet different and indeed inferior quality dresses, Defendant has created a likelihood of consumer confusion giving rise to Plaintiffs' unfair competition claims and the need for equitable relief. In *American Standard, Inc. v. Lyons Indus.*, Civ. No. 97-4806 (WGB), 1998 U.S. Dist. LEXIS 22882, at *33-38 (D.N.J. Feb. 17, 1998), the defendant was selling a substantially similar sink to that of plaintiff by using similar marketing schemes and displays as those of the plaintiff. The substantially similar appearance of the parties' goods and the defendant's mimicking of the plaintiff's marketing techniques led this Court to find that the plaintiff had demonstrated a likelihood of success on its unfair competition claim. *Id*. at *37.

Furthermore, this Court found ample circumstantial evidence to draw an inference that the defendant acted with the requisite intent that its sinks be substituted for the plaintiff's, and even though the plaintiff had not presented any concrete evidence of actual confusion, given the similarity of the marketing aids and the similarity of the product designs, this Court held there was a likelihood of consumer confusion. *Id*. at *38. Therefore, the Court found that the plaintiff was likely to suffer irreparable harm and granted the application for an injunction against the use of the defendant's remarkably similar marketing aids. *Id*. at *39. Similarly, Plaintiffs here are entitled to injunctive relief since they have illustrated Defendant's use of Plaintiffs' marketing materials to mislead consumers into buying a different and inferior product.

The tort of unfair competition "consists of the misappropriation of one's property by another--property which has some sort of commercial or pecuniary value." *New Jersey Optometric Assn. v. Hillman-Kohan Eyeglasses, Inc.*, 144 N.J. Super. 411, 427-428 (Ch. Div. 1976) (citing 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 13); *see also*

*Wellness Publ'g v. Barefoot*, Civil Action No. 02-3773, 2008 U.S. Dist. LEXIS 1514, at *60-61 (D.N.J. Jan. 8, 2008). This "misappropriation usually takes the form of 'palming off' or 'passing off' another's goods as [one's] own, although this modus operandi is not essential." *Id.* at 428 (citing *Columbia Broadcasting Sys., Inc. v. Melody Recordings, Inc.*, 134 N.J. Super. 368, 377-78 (Super. Ct. App. Div. 1975)). The key to the tort of unfair competition is misappropriation of property of commercial value. *Hoffman La Roche Inc. v. Genpharm Inc.*, 50 F. Supp. 2d 367, 380 (D.N.J. 1999).

Plaintiffs have invested substantial funds, efforts, and time to develop the dresses whose images have been taken by Defendant. Plaintiffs use those images to promote their goods and to showcase their dress designs. They are not generic, stock photographs of lifeless garments; rather they are the product of deliberate professional planning, staging, and editing calculated to capture the look, feel, and charisma of Plaintiffs' brands and designs. *See* Supplemental Declaration of Stephen Lang. As such, they have immense commercial value to Plaintiffs who rely on them to garner interest in their products and to communicate their brand images to the public. By utilizing Plaintiffs' photos and product depictions, Defendant has misappropriated Plaintiffs' property for its own benefit and to Plaintiffs' detriment. *See* Complaint at ¶¶ 51-54.

Plaintiffs have, therefore, shown a likelihood of success on their New Jersey unfair competition claims and injunctive relief is necessary and proper to protect Plaintiffs against any further irreparable harm caused by Defendant's misappropriation. See, e.g., *Fotomat Corp. v. Photo Drive-Thru, Inc.*, 425 F. Supp. 693, 711 (D.N.J. 1977) (a plaintiff who has demonstrated unfair competition faces the probability of lost trade and appropriation of its goodwill); *Tefal, S.A. v. Products International Co.*, 186 U.S.P.Q. 545, 548 (D.N.J.1975), *aff'd*, 529 F.2d 495, 497 (3d Cir. 1976) (the damages in an unfair competition case based on misappropriation are by their

very nature irreparable and not susceptible of adequate measurement).

## IV.   PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY THE COPYRIGHT ACT

In passing, Defendant suggests that Plaintiffs are attempting to use trademark law as an end-run around the requirements of copyright law, and that to the extent Plaintiffs allege Defendant has copied Plaintiffs' photographs, their recourse is through copyright infringement claims, not unfair competition claims under state and federal law.  *See* Def. Br. at 20.

Defendant misunderstands the nature of Plaintiffs' claims.  Plaintiffs' federal and state unfair competition claims are not based on Defendant's unabashed copying of Plaintiffs' original photographs, but rather Defendant's use of Plaintiff's images to sell knockoff products.  The crux of Plaintiffs' claims is not "copying," but rather the use of unfair and unethical business practices, *i.e.* passing off Plaintiffs' sophisticated photographic displays as its own, to deceive and confuse consumers into purchasing Defendant's substandard products.

Accordingly, Plaintiffs' unfair competition claims are not subsumed by the Copyright Act and stand on their own.  Unfair competition claims involving "passing off" are not preempted by federal copyright law.  *See Wilson v. Mr. Tee's*, 855 F. Supp. 679, 684 (D.N.J. 1994) (passing off claim not preempted by federal copyright law); *see also Warner Bros. v. ABC*, 720 F.2d 231, 247 (2d Cir. 1983) (state law claim of unfair competition alleging passing off is "not asserting rights equivalent to those protected by copyright and therefore do not encounter preemption"); *Fun-Damental, Ltd. v. Gemmy Indus. Corp.*, 1996 U.S. Dist. LEXIS 18653, 41 U.S.P.Q.2D (BNA) 1427, 1430 (S.D.N.Y. 1996) (passing off claim not preempted by Copyright Act) (citing cases).

Plaintiffs' passing off claims are not preempted primarily because such claims include the extra element of deception or misrepresentation which is not an element of a copyright claim. *See Fun-Damental Too, Ltd. v. Universal Music Grp., Inc.*, No. 97-1595, 1997 U.S. Dist. LEXIS

20

9597, at *4 (E.D. Pa. July 8, 1997) (passing off claim is not preempted "because such a claim alleges an extra element of deception or misrepresentation that is not necessary for a cause of action for copyright"); *Orth-O-Vision v. Home Box Office*, 474 F. Supp. 672, 684 n.12 (S.D.N.Y. 1979) ("Because the element of deception inherent in 'palming off' is not an element of copyright infringement claim, the 'passing off' cause of action is not preempted by federal law").

Since Plaintiff's Lanham Act and state law unfair competition claims involve the element of "deception," "misrepresentation," and "passing off," they do not need to be brought under the Copyright Act. *See Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc*., 210 F. Supp. 2d 552, 565-66 (D.N.J. 2002). As such, Plaintiffs can maintain their federal and state unfair competition claims against Defendant.

## **<u>CONCLUSION</u>**

For the foregoing reasons, this Court should enter the preliminary injunctive relief sought in Plaintiffs' application.

Dated: July 14, 2017

By:   s/Craig S. Hilliard
 CRAIG S. HILLIARD
 GENE MARKIN

 **STARK & STARK, P.C.**
 993 Lenox Drive
 Lawrenceville, NJ 08648
 (609) 896-9060
 *Attorneys for Plaintiffs*