UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

AMERICAN BRIDAL & PROM
INDUSTRY ASSOCIATION, INC., *et al.*,

Plaintiffs,

v.

JOLLYPROM.COM, *et al.*,

Defendants.

Civ. No. 17-2454

OPINION

RECEIVED

MAR - 9 2018

AT 8:30_____M
WILLIAM T. WALSH
CLERK

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court on the Motion for Default Judgment by American Bridal & Prom Industry Association and its represented companies (collectively, "Plaintiffs"). (ECF No. 52.) The Motion is unopposed. The Court has decided this matter based upon the written submissions without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Plaintiffs' Motion is granted.

## BACKGROUND

This lawsuit was brought by various bridal, prom, and formalwear designers, represented by the American Bridal & Prom Industry Association.[1] (*See* Compl., ECF No. 1.) Plaintiffs have sued a number of non-authorized retailers and rogue sites, known by their URL addresses predominately located in China, for trademark infringement, copyright, counterfeiting, and cybersquatting. (*Id.* ¶ 22; Pls.' Mem. at 1.) Plaintiffs own valid trade and service marks, both

---

[1] The American Bridal and Prom Industry Association ("ABPIA") is a trade association formed in part to investigate counterfeiting in the formalwear industry. (Compl. ¶ 1, ECF No. 1; Mem. in Support of Default J. [Pls.' Mem.] at 4, ECF No. 52-1.)

1

registered and unregistered, used in the worldwide marketing and sale of their formalwear. (*Id.*
¶¶ 28–30.) Plaintiffs allege that "through a massive Internet counterfeiting
scheme . . . Defendants have manufactured, imported, distributed, offered for sale and sold
counterfeit goods, including bridal gowns, social occasion dresses and other formalwear using
Plaintiffs' Marks and/or protected images (the "Counterfeit Products") and continue to do so."
(*Id.* ¶ 34.)

On April 10, 2017, Plaintiffs filed this lawsuit pleading the following Counts: (I) federal trademark counterfeiting and infringement, 15 U.S.C. § 1114; (II) unfair competition and false designation of origin, 15 U.S.C. § 1125(a); and (III) violations of the New Jersey Fair Trade Act, N.J.S.A. 56:4-1. (*See generally* Compl.) On June 16, 2017, the Court issued a temporary restraining order against all Defendants. (ECF No. 8.) Subsequently, some Defendants responded and have been dismissed from this action. On January 16, 2018, Plaintiffs requested and the Clerk of the Court entered default as to the remaining Defendants ("Defaulting Defendants").[2] (ECF No. 51.) Plaintiffs then moved for default judgment. (ECF No. 52.) This unopposed Motion is presently before the Court.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, following the entry of default by the Clerk of the Court, default judgment may be entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). A party who has made a proper showing under Rule 55 is not entitled to default judgment as of right; the entry of default is within the district court's discretion. *Hritz v. Woma Corp.*, 732 F.2d

---

[2] The Defaulting Defendants include jollyprom.com, jollybelle.com, hocostory.com, promclassy.com, promever.com, prettygirldressess.com, kenmadress.com, glamchase.com, dressywell.com, ca-bridals.com, ikmdresses.com, simibridal.com, dressesofgirl.com, promstylish.com, and jennaprom.com. (*See* ECF Entry Dated 1/17/18.)

2

1178, 1180 (3d Cir. 1984); *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–95 (3d Cir. 1984). "Default judgment is permissible only if the plaintiff's factual allegations establish a right to the requested relief." *E. Constr. & Elec., Inc. v. Universe Techs., Inc.*, 2011 WL 53185, at *3 (D.N.J. Jan. 6, 2011). The court must accept the plaintiff's well-pled factual allegations in the complaint. *Chanel, Inc. v. Matos*, 133 F.3d 678, 684 (D.N.J. 2015) (citing *Comdeyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

The court is to consider three factors in deciding whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct," taken willfully and in bad faith. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). The Third Circuit has cautioned that default judgment is a sanction of last resort—cases are more appropriately decided on their merits where practicable. *See Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 51 (3d Cir. 2003); *Hritz*, 732 F.2d at 1181. Ultimately, the entry of default judgment is left to the court's discretion. *See Hritz*, 732 F.2d at 1180–81; *Young v. Beard*, 227 F. App'x 138, 142 (3d Cir. 2007).

## DISCUSSION

### I. Default Judgment Analysis

Plaintiffs filed this Motion after Defaulting Defendants failed to file any answer or responsive pleadings to their Complaint and Temporary Restraining Order. Therefore, as a threshold matter, Plaintiffs' action is entirely unopposed. The Court will next consider the sufficiency of Plaintiffs' claims and the factors outlined in *Chamberlain v. Giampapa* to determine whether default judgment is warranted.

3

A. Sufficiency of Plaintiffs' Claims

   1. *Trademark Infringement, Unfair Competition, and False Designation*

Plaintiffs' claims for trademark infringement (Count I, 15 U.S.C. § 1114), unfair competition (Count II, 15 U.S.C. §1125(a)), and false designation (Count II, 15 U.S.C. § 1125(a)) are assessed under the same standard. *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) (applying the same standard to trademark infringement and unfair competition claims); *Fruit Flowers, LLC v. Jammala, LLC*, 2015 WL 5722598, at *3 (D.N.J. Sept. 29, 2015). These causes of action require proof of: (1) plaintiff's valid and legally protected mark; (2) plaintiff's ownership over said mark; and (3) defendant's "use of the mark to identify goods or services caus[ing] a likelihood of confusion." *A&H Sportswear*, 237 F.3d at 210; *Coach, Inc. v. Fashion Paradise, LLC*, 2012 WL 194092, at *2 (D.N.J. Jan. 20, 2012).

"The first two requirements are satisfied when a federally registered mark has become incontestable," such that "the mark has been registered, that it has been in continuous use for five consecutive years, and that there has been no adverse decision concerning the registrant's ownership or right to registration." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (citing *Fisons Horitculture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466 (3d Cir. 1994)). In support of their application for a TRO, Plaintiffs provided documentation that they own the federally-registered marks described in their Complaint, satisfying the first and second elements. (*See* Lang Decl., Ex. A, ECF No. 6-3.)

As to the third factor, "[a] likelihood of confusion exists when 'consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.'" *A&H Sportswear*, 237

4

F.3d at 210 (quoting *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir. 1992)). This element is satisfied when the original and counterfeit goods are in direct competition, and the mark itself is typically adequate evidence of confusion.[3] *Id.* at 211. Defaulting Defendants used identical images, names, and even style numbers in order to market and sell their counterfeit dresses. (*See* Lang Decl., Exs. 1–18 (comparing images on Defendants' and Plaintiffs' websites); Lang Decl. ¶ 13.) Plaintiffs allege that the use of actual or simulated marks in this manner leads consumers to believe they are associated with Plaintiffs' brands and that they are "buying the actual dress made by the trademark owner at a substantially lower price." (Pls.' Mem. at 11; Compl. ¶ 41.) The facts pled establish a likelihood of confusion, and therefore, Plaintiffs meet all three elements of their trademark infringement, unfair competition, and false designation causes of action.

2. *Trademark Counterfeiting*

To succeed on a trademark counterfeiting claim (Count I, 15 U.S.C. § 1114), Plaintiffs must establish that: "(1) defendants infringed a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), and (2) intentionally used the trademark knowing that it was counterfeit or was willfully blind to such use." *Chanel*, 558 F. Supp. 2d at 536 (footnote

---

[3] The Third Circuit looks to a non-exhaustive list of factors to help determine whether there is confusion satisfying the third factor: "(1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; [and] (10) other factors suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market." *Fruit Flowers*, 2015 WL 5722598, at *4 (citing *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 471 (3d Cir. 2005) (internal citations omitted)).

5

omitted). Unlike a claim for infringement, counterfeiting requires willful conduct. *Coach*, 2012 WL 194092, at *3. Willful conduct "involves an intent to infringe or a deliberate disregard of a mark holders' rights," as demonstrated by "deliberate and unnecessary duplicating of a plaintiff's mark . . . in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured." *Coach, Inc. v. Bags & Accessories*, 2011 WL 1882403, at *3 (D.N.J. May 17, 2011) (internal citations omitted). Plaintiffs have met this burden in their pleadings and supporting documents. As to the first element, the marks at issue are federally-registered, belonging to Plaintiffs. And second, as discussed above, Defendants made use of identical images and style numbers in an effort to appear associated with these brands. This degree of replication is intentional.

3. *New Jersey Fair Trade Act*

Plaintiffs' final claim is for violations of the New Jersey Fair Trade Act (Count IV, N.J.S.A. 56:4-1), an analysis identical to that used in the federal claims described above, *see Zoetis LLC v. Roadrunner Pharmacy, Inc.*, 2016 WL 755622, at *4 (D.N.J. Feb. 25, 2016); *Coach, Inc.*, 2011 WL 1882403, at *5 ("These state law claims are similar to the federal Lanham Act claims, and this Court has found liability under federal law to be sufficient to establish liability under state law."). Having found that Plaintiffs successfully pled and are entitled to relief under these federal Counts, the Court is likewise satisfied that Plaintiffs have successfully pled a cause of action under the New Jersey Fair Trade Act. In sum, Plaintiffs are entitled to relief for all causes of action.

B. <u>Default Judgment Factors</u>

The Court next examines the equitable default judgment factors. First, prejudice refers to an impairment of a plaintiff's ability to pursue its claim. *Feliciano v. Reliant Tooling Co.*, 691

F.2d 653, 657 (3d Cir. 1982). Failure to file any responsive pleadings may leave a plaintiff without recourse on its claims, *United Communities, LLC v. Hallowell Int'l, LLC*, 2012 WL 5880295, at *4 (D.N.J. Nov. 21, 2012), raising particular concerns for further, future harm, *see U.S. Commodity Futures Trading Comm'n v. Siegel*, 2014 WL 7404537, at *8 (D.N.J. Dec. 30, 2014); *CrossFit v. 2XR Fit Sys., Inc.*, 2014 WL 972158, at *8 (D.N.J. Mar. 11, 2014).

Next, whether a defendant has a meritorious or litigable defense is regarded as a dispositive issue. *Nat'l Specialty Insur. Co. v. Papa*, 2013 WL 1952151, at *2 (D.N.J. May 9, 2013); *see also $55,518.05 in U.S. Currency*, 728 F.2d at 195. A meritorious defense is one that would constitute a complete defense at trial. *$55,518.05 in U.S. Currency*, 728 F.2d at 195; *Williams v. Zhou*, 2015 WL 4940817, at *1 (D.N.J. Aug. 19, 2015). Where a defendant has not responded and there are no defenses reflected in the record, courts cannot say whether a meritorious defense exists and are permitted to presume that none exists. *Coach*, 2011 WL 1882403, at *6. Here, Defaulting Defendants have provided no response to Plaintiffs' Complaint, subsequent pleadings, temporary restraining order, or this Motion, and therefore, they have failed to present the Court with any defense that could possibly be considered meritorious or permit success at trial. Moreover, Plaintiffs have met their burden and articulated a sound right to relief based on the conduct alleged, without any anticipated defenses. (*See* Pls.' Mem. at 14.)

Finally, culpable conduct refers to "actions taken willfully or in bad faith," *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 124 (3d Cir. 1983), rising above the level of mere negligence, *Sourcecorp Inc. v. Croney*, 412 F. App'x 455, 460 (3d Cir. 2011). Failure to defend, despite service of a complaint, is a product of defendant's culpable conduct. *Chanel*, 133 F.3d at 687. Here, all Defendants were successfully served via email. (Hilliard Decl., Ex. P, ECF No.

52-18; Pls.' Mem. at 5.) A number of Defendants have responded and participated in this litigation, but the Defaulting Defendants have failed to do so over the past year, which the Court finds adequate evidence of willful ignorance of this lawsuit.

## II.   Plaintiffs' Remedies and Damages Sought

In this motion, Plaintiffs seek relief in the form of a permanent injunction and monetary damages of profits, treble damages, and statutory penalties. (Pls.' Mem. at 15.)

### A. Permanent Injunctive Relief

Plaintiffs seek varied injunctive relief designed to curtail and prevent any future infringing conduct, with limitations on Defaulting Defendants and all those who may act in concert with Defaulting Defendants. (Pls.' Mem. at 18.)[4] Permanent injunctive relief is appropriate where the plaintiff can meet or demonstrate the following four factors:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay v. MercExchange*, 547 U.S. 388, 390 (2006); *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 214–15 (3d Cir. 2014) (extending the *eBay* requirements for permanent injunctive relief to cases under the Lanham Act).

First, the Third Circuit recognizes "trademark infringement amounts to irreparable injury as a matter of law." *Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228, 237 (3d Cir. 2003) (noting, however, this fact cannot swallow the remaining prongs of the inquiry) (internal citations

---

[4] Some of the specific relief Plaintiffs seek enjoins Defendants from: using any of Plaintiffs' marks, or copies, imitations, and counterfeits thereof; passing off counterfeit products; and shipping, delivering, selling, distributing, etc. dresses or accessories bearing Plaintiffs' marks or likenesses of. (*Id.* at 18.) Plaintiffs also seek to restrict Defendants' use of, compel them to disable, and transfer ownership of these domains and URLs. (*Id.* at 19.)

8

omitted). Where trademark violations have been pled, including diminishment of a plaintiff's brand and name through counterfeited products, "irreparable injury becomes the 'inescapable conclusion.'" *Chanel*, 133 F.3d at 689 (citing *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998)); *Coach*, 2011 WL 1882403, at *9 (reaching the "inescapable conclusion" of irreparable injury where there is a risk of confusion caused by the defendant's trademark infringement). Here, Plaintiffs have successfully pled claims of trademark infringement, counterfeiting, and false designation, where the Defaulting Defendants used Plaintiffs' marketing images, style names and numbers, and goodwill to sell inferior quality counterfeit dresses, thereby confusing consumers. *See supra* sections I.A.2–3. This type of conduct is likely to produce the "loss of control or reputation, loss of trade, and loss of goodwill," which this Circuit recognizes as irreparable injury. *CrossFit*, 2014 WL 972158, at *10 (internal citation omitted).

Second, monetary compensation alone cannot necessarily cure injury to a company's reputation and goodwill. *Chanel*, 133 F.3d at 689; *Coach*, 2011 WL 1882403, at *9. While damages can compensate a plaintiff "for the injury incurred to this point, it will not protect against future infringement." *CrossFit*, 2014 WL 972158, at *10; *see also id.* ("There is every reason to think they will resume infringing once they are no longer under the shadow of litigation."). Where Defaulting Defendants have not yet participated in or recognized this lawsuit, this factor marshals in favor of injunction to ensure the future protection of Plaintiffs' marks and brand reputation. (*See* Pls.' Mem. at 17.)

Third, courts should balance any possible harm to the defendant. In infringement actions, there is no injury where an injunction "requires [a] [d]efendant to abide by the law and to refrain from infringing [] federally protected marks," because any subsequent violation would be "self-

inflicted." *Chanel*, 133 F.3d at 689; *see also AAMCO Transmissions, Inc. v. Dunlap*, 646 F. App'x 182, 184 (3d Cir. 2016) ("[A] permanent injunction in this case would merely prohibit [the defendants] from engaging in an activity to which [they] have no legal right."). This is the case here, where the injunction would require Defaulting Defendants to cease their infringing conduct and use/operation of the websites enabling said infringement. Although the Defaulting Defendants must relinquish control of their websites, it is not a significant burden or harm given that these sites are being used to perpetuate wrongful conduct. Additionally, only Plaintiffs face the potential for future harm, not Defendants. (Pls.' Mem. at 17.)

Fourth, the public interest strongly favors protecting a trademark holder's property interests from erosion and avoiding public confusion. *Bill Blass, Ltd. v. SAZ Corp.*, 751 F.2d 152, 156 (3d Cir. 1984). Therefore, granting Plaintiffs' request for a permanent injunction for these violations will further this interest. On balance, the Court is satisfied that this case warrants injunctive relief in the manner set forth by Plaintiffs.

B. Monetary Damages

Final judgment may be entered where the plaintiff has pled a sum certain for damages. Fed. R. Civ. P. 55(b)(2). Unlike default judgment, the court need not accept the plaintiff's allegations regarding damages as true, *Chanel*, 558 F. Supp. 2d at 535, and the calculation of damages is an equitable analysis within the court's broad discretion, *see Covertech Fabricating, Inc. v. TVM Building Prods., Inc.*, 855 F.3d 163, 176 (D.N.J. 2017). Damages based on profits are assessed by reasonableness and should be grounded in sufficient information and estimates in the record. *Id.* at 177.

Under 15 U.S.C. § 1117, the Plaintiff bears the choice of either actual or statutory damages. *See* 15 U.S.C. § 1117(c); *Covertech Fabricating*, 855 F.3d at 176. Plaintiffs argue for

both profits and statutory damages. First, they request seizure of Defendants' PayPal accounts as a reasonable accommodation for damages, but only seek the amount currently frozen[5] in those accounts—$4,476.61. (Pls.' Mem. at 21; Hillard Decl., Ex. N, ECF No. 52-16.) They characterize this as profit disgorgement, concluding that there is no alternative explanation for the revenue in these accounts other than the sale of counterfeit goods. (*Id.* at 26.) Plaintiffs also articulate an argument for treble damages due to Defendants' intentional use of a counterfeit mark. *See* 15 U.S.C. § 1117(b), (b)(1). However, Plaintiffs note that they are willing to forego this request and only seek the money currently found in PayPal accounts. (Pls.' Mem. at 22.)

Second, Plaintiffs advance an alternative argument for statutory damages. The statute permits recovery "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" for use of counterfeit marks, 15 U.S.C. § 1117(c)(1), or "not less than $1,000 and not more than $100,000 per domain name, as the court considers just" for cyberpiracy, *id.* § 1117(d). Plaintiffs argue that because Defaulting Defendants have failed to appear, their true profits cannot be discovered and statutory damages are an appropriate alternative. (Pls.' Mem. at 24.) They further argue that Defaulting Defendants' willful conduct and use of an "expansive network of Infringing Websites" supports the award of statutory damages to their maximum. (*Id.*) However, because Plaintiffs' ultimately request the money frozen in Defaulting Defendants' PayPal accounts, which is the best representation of actual profit damages, statutory damages are not warranted and the Court need not consider this alternative argument. (*Id.* at 22; Pls.' Proposed Order at 8, ECF No. 52.)

---

[5] This money is from the accounts and balances frozen by the Court's TRO. (Hilliard Decl. ¶ 15, ECF No. 52-2.)

11

## CONCLUSION

For the reasons stated herein, Plaintiffs' Motion for Default Judgment is granted. An appropriate order will follow.

Date: 3/9/18

ANNE E. THOMPSON, U.S.D.J.